## UNITED STATES

v.

**Sergeant Michael D. ALFORD, FR 261–67–8137, United States Air Force.**

**ACM 28244.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 Sept. 1989.

Decided 30 Oct. 1990.

---

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair; Lieutenant Colonel Jeffrey R. Owens and Major Bernard E. Doyle, Jr.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Brenda J. Hollis and Major Paul H. Blackwell, Jr.

Before O'BRIEN, PRATT and RIVES, Appellate Military Judges.

## DECISION

RIVES, Judge:

Contrary to his pleas, Sergeant Michael D. Alford was convicted of using cocaine by a general court-martial composed of officer members.[1] On appeal, he urges that

---

**1.** Article 112a, UCMJ, 10 U.S.C. § 912a. His approved sentence extends to a bad conduct discharge, confinement for six months, total for-

the evidence is not sufficient to sustain the findings of guilty. He also asserts that his conviction cannot stand because of an instructional error on the critical issue of whether the government proved that he knowingly used a controlled substance. We decide against the appellant on both issues.

## I

█ On its facts, this case is like many others that result in a prosecution for the use of drugs: an individual provides a urine sample, the chain of custody is well-maintained, proper laboratory procedures are followed, and the specimen tests positive for the presence of a controlled substance. This evidence shows that the individual ingested a certain drug. The remaining element to be proven is whether the individual knowingly used the contraband substance.

On 19 April 1989, Alford's first sergeant received an anonymous phone call from a woman who alleged that Alford had been abusing drugs for some time. She specifically stated that Alford had smoked crack cocaine on the night of 18 April.

With no evidence or suspicions other than the phone call, base criminal investigators interviewed Alford on 20 April. He was told that he was suspected of possible drug abuse. After he was advised of his rights under Article 31, UCMJ, 10 U.S.C. § 831, he requested an attorney. The interview was stopped, but Alford was then asked whether he would consent to provide a urine sample for drug testing purposes. He agreed to do so.[2]

The Air Force Drug Testing Laboratory at Brooks Air Force Base, Texas tested Alford's urine sample and reported the presence of the cocaine metabolite benzoylecgonine. Expert testimony at trial established the procedures that were followed in the collection and testing of Alford's urine sample. The expert concluded that Alford

"must have used cocaine in some fashion prior to giving [the] urine sample" on 20 April.

During cross-examination, the expert said that a small oral dose of cocaine (mixed in a soda, for example, and possibly undetectable by the user) could result in a positive urinalysis test 48 hours or longer after ingestion. The expert also testified that a large pipe and a constant flame are required to use crack cocaine, so it would be very difficult to use it surreptitiously in a public place.

The defense called two of Alford's colleagues as witnesses. They established that Alford had worked on a mobility processing line from 17 through 20 April. His duty hours during that exercise were from 1700 hours until 0500 hours. On the evening of 18 April—the specific date the anonymous source said Alford had used crack cocaine—the witnesses recalled that the processing line was very busy and they had only a few opportunities for short breaks. They stated that they had worked closely with Alford that evening, and he did not appear to be under the influence of drugs or alcohol.

These matters are substantially undisputed. Based on the urinalysis test, the defense did not challenge the fact that cocaine had been consumed in some manner by Alford. At issue is whether the government proved that his use of cocaine was wrongful, as proscribed by Article 112a.

In its discussion of "wrongfulness," the Manual for Courts–Martial provides that "use ... of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary." MCM, Part IV, paragraph 37c(5) (1984). In the landmark case of *United States v. Mance*, 26 M.J. 244 (C.M.A.1988), Chief Judge Everett noted that:

> ... a person does not possess a substance unless he is aware of its pres-

---

feiture of all pay and allowances, and reduction to airman basic.

**2.** The trial defense counsel did not object to the admissibility of the urinalysis, and it is not raised as an issue on appeal. We thus do not

face the issue of whether the consent was voluntary under the circumstances of this case. Mil. R.Evid. 314(e); R.C.M. 905(e); *see United States v. Roa*, 24 M.J. 297 (C.M.A.1987).

ence.... [I]f someone drops a controlled substance into a glass from which the servicemember is drinking but he is unaware that this has occurred, he lacks the "knowledge" which is required for "use." In prosecutions for either possession or use of a controlled substance, the presence of that substance could permit a logical inference under appropriate circumstances that the accused had the requisite knowledge of its presence; and this permissive inference would be legally sufficient to satisfy the Government's burden of proof as to knowledge.

26 M.J. at 253–254 (citations omitted).

In this case, the urinalysis was properly conducted, the chain of custody was maintained, and proper laboratory procedures were followed. The presence of the cocaine metabolite in Alford's urine leads us to the permissible inference that he knowingly consumed the drug. Ultimately, we are satisfied that Alford's wrongful use of cocaine was proven at trial. We are persuaded, beyond a reasonable doubt, that Alford is guilty of the charged offense. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M. A.1987).

## II

At the conclusion of evidence, the military judge held an Article 39(a), 10 U.S.C. § 839(a) session to discuss his instructions on findings. He advised counsel that he would give the members "the standard *Mance* instruction." Both parties concurred. The "standard *Mance* instruction" is a modification to para. 3–76.4, DA Pam. 27–9, *Military Judge's Benchbook*, Change 1 (15 February 1985), which conforms the pattern instruction to the *Mance* decision. *See Mance*, 26 M.J. at 256.

The purpose of instructions "is to explain the law applicable to the case, in order that the court-martial may apply the law to the facts and return a verdict." *United States v. Noe*, 7 U.S.C.M.A. 408, 410, 22 C.M.R. 198, 200 (1956). Following arguments by counsel, the military judge in this case instructed the members on findings as provided by R.C.M. 920. The critical issue was whether Alford had knowingly ingested the cocaine that resulted in his court-martial; this issue was to have been explained by the *Mance* instruction. The record discloses, however, that the military judge misstated a portion of his charge in this crucial area.

After advising the members of the basic elements of the offense, the judge instructed as follows:

Now use, as described in the first element, it must be a knowing and conscious use. Use is knowing and conscious when the accused is aware of the presence of the substance at the time of its use. Unless you're satisfied, beyond a reasonable doubt, that the accused *was not* aware that he was using a controlled substance, you may not find him guilty. (emphasis added).

The final sentence contains the error. The judge misspoke when he added the word "not" to the charge; the instruction should have been: "Unless you're satisfied, beyond a reasonable doubt, that the accused *was* aware that he was using a controlled substance, you may not find him guilty."

■ When a portion of an instruction conveys inaccurate guidance, several questions arise: (1) Did counsel object to the instruction at trial? (If not, has the issue been waived?) (2) How critical was the instruction that was not given properly? (3) Considering the instructions as a whole, how likely is it that the members were misled by the erroneous instruction? The ultimate issue, of course, is whether the accused was prejudiced by the error. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

The error in this case was apparently not noticed by any of the trial participants. Neither trial nor defense counsel objected to the instruction when given, and both responded negatively when the military judge specifically asked if "counsel for either side have any request for additions, deletions, or modifications of the instructions as I have given them?" [3]

3. Additionally, we note that before he authenticated the record of trial, the military judge

■ We have considered case law holding that failure to object to an instructional error at the trial level waives the issue for appellate purposes. *See, e.g., United States v. Hargrove,* 25 M.J. 68 (C.M.A.1987); *United States v. Salley,* 9 M.J. 189 (C.M.A.1980); *United States v. Kloh,* 10 U.S.C.M.A. 329, 27 C.M.R. 403 (1959). In this case, however, we are persuaded that the issue is not waived because the erroneous instruction concerned an element of the offense. *See United States v. Crumley,* 31 M.J. 21 (C.M.A.1990); *United States v. Cauley,* 12 M.J. 484, 487 (C.M.A. 1982); *United States v. Buchana,* 19 U.S. C.M.A. 394, 41 C.M.R. 394 (1970). We further note the *sua sponte* obligation of a military judge to clearly instruct members on the elements of an offense. *United States v. Harper,* 22 M.J. 157, 164 (C.M.A. 1986). Thus, we decline to find waiver.

■ Unquestionably, the instructional error here is significant, because it concerns an element of the offense. *Mance,* 26 M.J. at 254; *see United States v. Harper,* 22 M.J. 157, 164 (C.M.A.1986). The judge was obliged to clearly instruct the members that they must be satisfied, beyond a reasonable doubt, that Alford knew he was using a controlled substance.

The fact that the judge misspoke, however, does not mandate reversal. For example, in the recent case of *United States v. Crumley,* 31 M.J. 21 (C.M.A.1990), the accused faced a charge of distribution of cocaine and the military judge failed to specifically instruct the members that knowledge was an element of wrongful distribution. The Court of Military Appeals determined that a "harmless-error analysis was permissible if, under the instructions that were given, the members could not have found the accused guilty without finding that the element of knowledge was present." 31 M.J. at 24. While *Crumley* involved the omission of a particular instruction, the principle applies as well to cases, as here, involving inaccurate instructions. *See, e.g., United States v. Clark,* 7 M.J. 178 (C.M.A.1979). Thus, the error in this case can be tested for prejudice.

Upon our initial review of the record, we specified the issue [4] to appellate counsel to receive their views on the impact of the instructional error. Appellate government counsel contend that the misstated instruction is "nonsensical," and therefore harmless, because it indicates that the accused could not be convicted unless he was "not aware that he was using a controlled substance." Appellate defense counsel, on the other hand, point out that since the members were given the instruction orally,[5] they may well have comprehended it as a logically (albeit not legally) correct statement. That is, the members may have understood from the instruction that Alford "had the burden to prove beyond a reasonable doubt his lack of knowledge of the contraband nature of the substance." It is this latter possibility which must be examined in assessing the prejudicial impact of the instructional error.

■ The issue we now face is whether the members were misled by the error. In evaluating the error, we consider it in the context of the instructions in their entirety.

corrected errors on 28 separate pages. He made a correction in the very paragraph that contained the erroneous instruction, two sentences before his misstatement. He did not, however, note the error that is the subject of our review.

4. The specified issue was:
WHETHER THE FINDINGS OF GUILTY TO THE CHARGE AND SPECIFICATION CAN BE SUSTAINED WHEN THE MILITARY JUDGE PROVIDED THE FOLLOWING ERRONEOUS INSTRUCTION ON FINDINGS TO THE MEMBERS: "UNLESS YOU'RE SATISFIED, BEYOND A REASONABLE DOUBT, THAT THE ACCUSED WAS NOT AWARE

THAT HE WAS USING A CONTROLLED SUBSTANCE, YOU MAY NOT FIND HIM GUILTY."

5. In *United States v. Turner,* 30 M.J. 1183 (A.F.C. M.R.1990), we commended the military judge for providing written instructions on findings to the court members. Such a practice "significantly reduces the possibility of misunderstanding instructions and the need for returning to open sessions in the middle of deliberation to re-instruct or answer questions on instructions." 30 M.J. at 1185 (footnote). Written instructions in this case could have averted the instructional error.

*Clark,* 7 M.J. 178; *United States v. Buchana,* 19 U.S.C.M.A. 394, 41 C.M.R. 394 (1970); *United States v. Cotton,* 13 U.S.C.M.A. 176, 32 C.M.R. 176 (1962). In *United States v. Hatchett,* 2 U.S.C.M.A. 482, 9 C.M.R. 112 (1953), the Court of Military Appeals observed:

> ... there is a well-understood rule of law, i.e., that instructions must be considered in their entirety and if, when gathered together by their four corners, they state the law properly and with sufficient clarity to be understood by the members of the court-martial, then they are not prejudicial even though one sentence may be technically incorrect.

9 C.M.R. at 118. *See also Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *United States v. Giordano,* 15 U.S.C.M.A. 163, 35 C.M.R. 135 (1964).

Considering the complete instructions in this case, we are confident that the court members were not misled by the one erroneous statement of the military judge. Shortly after his misstatement, the trial judge instructed that use of a controlled substance is not wrongful if the use occurred "without knowledge that the substance is contraband. For example, use by a person who uses cocaine in his coffee, believing it to be sugar." The judge later provided detailed instructions on the concept of reasonable doubt and the fact that the burden of proving guilt beyond a reasonable doubt rests with the government. He noted that "[t]he burden never shifts to the accused to establish innocence or to disprove the facts necessary to establish each element of this offense."

The military judge mistakenly added a second negative in the instruction at issue. While this was wrong, we evaluate it in the context of the full body of guidance provided to the court members, and find it to be a minute error that does not detract from an otherwise proper and complete instruction. The Court of Military Appeals has noted that "syntactical nicety is not the standard of instructional adequacy." *United States v. Truman,* 19 U.S.C.M.A. at 504, 507, 42 C.M.R. 106, 109 (1970). Considering the instructions in this case in their entirety, we are satisfied that the members were not misled by the error, and that they were in fact given the proper legal principles to guide them in their deliberations.[6]

We are fully satisfied that the members understood that the burden of proof rested with the government, and that they could return a verdict of guilty only if convinced beyond a reasonable doubt that Alford knew he was using a controlled substance. *See Crumley,* 31 M.J. at 24; *see United States v. Slack,* 12 U.S.C.M.A. 244, 246, 30 C.M.R. 244, 246 (1961).

The findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Chief Judge O'BRIEN and Judge PRATT concur.

---

**6.** We look with special scrutiny at the facts in this case because it involves a prosecution for wrongful use of cocaine based on results of a urinalysis test. The possibility that the accused unknowingly ingested the drug has been carefully considered. We distinguish the instructional error here from cases such as *United States v. Brown,* 26 M.J. 266 (C.M.A.1988), wherein the instructions omitted any mention of the government's need to prove "knowledge" in order for the members to convict.