UNITED STATES

v.

Sergeant John B. ANDREWS, FR459–29–5944, United States Air Force.

ACM 29547.

U.S. Air Force Court of Military Review.

Sentence Adjudged 1 July 1991.

Decided 16 Feb. 1993.

Appellate Counsel for the Appellant: Captain Robert A. Parks (argued), Colonel Jeffrey R. Owens, Major Mary C. Yastishock, and Major Alice M. Kottmyer.

Appellate Counsel for the United States: Captain Thomas E. Wand (argued), Colonel Richard L. Purdon, Lieutenant Colonel Brenda J. Hollis, Lieutenant Colonel Jeffery T. Infelise, and Major Paul H. Blackwell, Jr.

Before DIXON, McLAUTHLIN, and GRUNICK, Appellate Military Judges.

## OPINION OF THE COURT

DIXON, Chief Judge:

Appellant stands convicted by general court-martial, contrary to his pleas, of assault with intent to inflict grievous bodily harm and burglary. His approved sentence consists of a dishonorable discharge, confinement for 8 years, total forfeitures and reduction to E–1. We find error prejudicial to the appellant's substantive rights and set aside the findings and sentence.

Appellant raises nine assignments of error. In view of our disposition, however, only one requires discussion. It is:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY FAILING TO GRANT THE DEFENSE MOTION FOR A CONTINUANCE?

We start with the premise that a military judge may, for reasonable cause, grant a continuance to any party for such time, and as often, as may appear just. Article 40, UCMJ, 10 USC § 840.[1] In authorizing continuances, both the Uniform Code of Military Justice and the Manual for Courts–Martial seek to afford counsel for both sides an adequate opportunity to prepare for trial.

█ The law is well settled that the decision of a military judge denying a continuance will not be overturned in the absence of clear abuse of discretion. R.C.M. 906(b)(1); *United States v. Thomas*, 22 M.J. 57 (C.M.A.1986); *United States v. Menoken*, 14 M.J. 10 (C.M.A.1982); *United States v. Proctor*, 34 M.J. 549 (A.F.C.M.R. 1992). The "abuse of discretion" standard is a strict one and involves more than a mere difference in opinion. The challenged action must be found arbitrary, clearly unreasonable or clearly erroneous before being invalidated on appeal. *United States v. Travers*, 25 M.J. 61 (C.M.A.1987). Here, we find the denial of the defense motion clearly unreasonable. A recital of the pertinent facts and a review of the case chronology will illustrate the basis for our findings.

## I. FACTS

On Monday, 8 April 1991 at approximately 2020, Ms. S, a military dependent, was assaulted by someone while her husband was away from home on a temporary duty assignment. She testified she heard a knock at her door but saw no one when she looked through the peephole. Opening the door, she observed someone wearing a ski mask crouched down in the stairwell. The assailant came at her, pushed through the door, placed a towel around her head and mouth, and forced her to the floor. She kicked her attacker in the groin and bit the thumb of the hand he held over her mouth.

As Ms. S struggled to get away, the assailant pulled on the towel around her neck, making it difficult for her to breathe. She felt three blows to her head as she attempted to turn on her back. She testified her attacker used a chrome dumbbell to strike her. She reached up and pulled his ski mask part way up and observed that her attacker had a "military haircut" and dark brown hair. She could see "part of his mouth and jaw." Her assailant pulled the mask down, grabbed his things, and ran out. No words were spoken during the attack.

Ms. S summoned some neighbors who called the police and an ambulance. When asked if she knew who had attacked her, she stated she did not. Later at the hospital, Ms. S stated "if she had to name someone who it looked like, it looked like her friend, John Andrews." However, she said she thought the assailant was taller than appellant and had curly hair—appellant's hair was straight. The day after the attack, Ms. S called appellant's wife, her close friend, to tell her what happened. Ms. S asked to borrow a steam carpet cleaner so she could clean up the blood. A few hours later, appellant and appellant's wife took the carpet cleaner over to Ms. S's residence and helped with the clean up. Ms. S gave no indication she believed appellant was her attacker.

On 12 April 1991, 4 days after the attack, Ms. S took a polygraph examination given by agents from the Office of Special Investigations (OSI). In the post-polygraph interview, the case agent accused Ms. S of "lying about the story." Then, for the first time, Ms. S told investigators that her assailant was "definitely John Andrews."

A search of appellant's house was conducted by OSI agents on 12 April 1991 under a search authorization obtained from the combat support group commander. The agents found a case containing a set of chrome dumbbells belonging to appellant in a crawlspace located next to the nursery in appellant's quarters. Inside the case were a number of hairs and fiberlike material.

---

1. The discussion in the Manual for Courts–Martial (1984) following R.C.M. 906(b)(1) uses the words "the military judge should" rather than "the military judge may" in restating Article 40, UCMJ. It also lists "insufficient opportunity to prepare for trial" as one of the reasons for a continuance.

The dumb bells were sent to the U.S. Army Criminal Investigation Laboratory for analysis. One of the dumbbells tested positive for blood in two separate screening tests. However, the lab expert was not able to positively confirm the presence of blood since other materials also test positive for blood in these screening tests, and there was an insufficient sample for confirmation testing. No other items found at the crime scene or at appellant's house, including the hairs and fibers found inside the dumbbell case, linked appellant to the attack.

## II. CASE CHRONOLOGY

Appellant was confined from 12 April 1991 until trial. Charges were preferred on 10 May 1991 and an officer was appointed to conduct an investigation pursuant to Article 32, UCMJ. Captain H, the Area Defense Counsel, represented appellant during the investigation. Ms. S declined to appear at the investigation and the investigating officer considered her sworn statement. No defense evidence was presented at the investigation. On 14 May 1991, the investigating officer recommended trial by general court-martial.

The charges were referred to trial on 30 May 1991 and 10 June was set as the initial trial date. On 5 June, the government sought a delay until 26 June 1991 based on the unavailability of key laboratory evidence. Captain H opposed the delay request and demanded a speedy trial. The military judge granted the delay over defense objection. Pursuant to a request for individual defense counsel, Captain S, a circuit defense counsel, was detailed to represent appellant on 12 June 1991 and Captain H was relieved from further defense responsibilities.

On 13 June 1991, Captain S submitted a defense request for investigative assistance which was approved on 21 June. On 21 June, citing the appointment of the investigative assistant, her receipt of an ille-

gible copy of the laboratory analysis, and her 20 June request for a defense consultant, Captain S filed a written request for delay in trial until 8 July 1991. She estimated a need for 10–14 days to complete the defense investigation. The government's written opposition to the defense delay was filed on 24 June, noting the unavailability of both detailed trial counsel and the government's blood test expert on 8 July. The military judge denied the defense delay request on 24 June 1991.

At trial on 26 June, defense counsel reiterated her desire for a defense delay and moved for a continuance until 8 July 1991. Specifically, defense counsel stated she was unprepared to represent appellant primarily because she had not had sufficient time to utilize the investigator that had just been made available. She cited the fact the case was complicated, the government already had spent 3 months investigating, and this was the first delay requested by defense. Defense counsel asserted appellant's due process rights under the Fifth and Sixth Amendments would be violated if no continuance were granted.

After hearing arguments from both sides, the military judge denied the defense request for continuance. Evaluating the investigative aspect of the defense request, the military judge concluded the defense had enough time to accomplish parts of the investigation while other parts would take more than the additional time requested. The military judge also noted the defense had opposed the initial government delay request, suggesting they were ready for trial then. Denying the motion for a continuance, he ruled the defense had not satisfactorily shown it was entitled to a delay.

## III. DISCUSSION

■■■ This Court will not overturn a trial judge's decision to deny a request for continuance unless we find it clearly unreasonable and prejudicial.[2] However, since

---

2. The practice of liberally granting motions for delay set forth in *United States v. Daniels*, 28 C.M.R. 276 (C.M.A.1959) has been tempered in recent years by a recognition that trial judges are tasked with insuring that courts-martial are conducted in a fair, orderly, and efficient manner. *United States v. Thomas*, 22 M.J. 57 (C.M.A.1986). The military trial judge's authority to manage the proceedings over which he presides is entitled to great deference at the

the military judge remains accountable for prejudice that may result to an accused, the judge should err on the side of liberalism in taking action on a delay request when good cause for a delay exists. When the moving party is the accused, the trial judge should weigh the underlying basis for the continuance against the adverse consequences to the prosecution from delaying the trial. *See United States v. Perry*, 14 M.J. 856 (A.C.M.R.1982). Whenever an accused's request for a continuance is based on a substantial right, mere administrative inconvenience to the prosecution is not sufficient grounds for denying the request. *United States v. Keys*, 29 M.J. 920 (A.C.M.R.1989); *See also United States v. Furgason*, 6 M.J. 844 (N.M.C.M.R.1979). Whether a trial judge has abused discretion depends on the fairness with which the judge has balanced the competing interests of the parties. *United States v. Thomas*, 33 M.J. 694 (A.C.M.R.1991).

■ In reaching our conclusion that the denial of the defense request for continuance in this case was an abuse of discretion, we were persuaded by the following factors:

a. The delay request was premised on the need for 10–14 days for additional investigation and preparation. This could scarcely be seen as an unreasonable request, given the nature of the evidence against appellant and the seriousness of the case.

b. This was the initial defense requested delay. A previous government requested delay of 30 days had been granted over defense objection.

c. The delay request was filed on the same day that a defense request for investigative assistance, which had been pending for 8 days, was granted. The grant of investigative assistance signals a recognition of the complexity of the case by the government. Yet, without a continuance, the defense would have little time (5 days from the delay request

and only 2 days after its denial) to effectively use this resource. In fact, the trial judge, in denying the request, noted that even more time than was requested would be needed to fully explore all the investigative avenues the defense suggested.

d. The record reflects appellant's individual military counsel was not made available until 12 June, just 2 weeks before trial. At that time, the area defense counsel, who had represented appellant at the Article 32 investigation and who had opposed the earlier request for delay from the government, was relieved of her defense responsibilities and was no longer on the case. Appellant's counsel also represented that her involvement in another trial from 14 to 18 June had diminished her already limited preparation time.

e. Appellant's counsel presented a need for additional preparation time to defend against an inference drawn from the laboratory analysis. Although the report from the laboratory was not conclusive, the defense apparently feared that unless its limitations were properly explained, the report would prove unduly prejudicial to appellant. A request for an expert consultant was pending when the delay request was made.

f. Defense counsel reiterated at trial that the defense team was not prepared to represent appellant through no fault of its own.

g. The prosecution opposed the delay but offered no reasons other than administrative inconvenience and its general disagreement that a delay was needed.

Balancing the competing interests of the parties, we find the denial of the defense request clearly unreasonable. Having determined there was an abuse of discretion, we are unable to conclude the trial results would have been the same. We simply cannot find that appellant suffered no prejudice.[3]

appellate stage. *See United States v. Browers*, 20 M.J. 356, 361 (Cox, J., concurring). When there is a discernable and reasonable basis for the

decision denying a delay request, it should be upheld.

**3.** *See United States v. Smith*, 40 C.M.R. 418, 1968 WL 5494 (A.C.M.R.1968) in which the

Accordingly, we set aside the findings and sentence. A rehearing may be ordered.

Senior Judge McLAUTHLIN and Judge GRUNICK concur.

Army Court of Military Review addressed the issue of prejudice. The following language is particularly instructive:

> [T]he United States Supreme Court has condemned "myopic insistence upon expeditiousness in the face of a justifiable request for delay which can render the right to defend with counsel an empty formality." The Federal Courts generally "insisted that ample time be allowed for preparation for the defendant's criminal trial ... a showing of actual prejudice is not the basis on which these cases rest. The lack of opportunity for investigation, reflection, conference and mature consideration which results from [too hasty] trial of felonies ... provides the basis for granting the writ [of habeas corpus].... Courts need not look for specific prejudice. The burden isn't on the petitioner to show that he would profit by a trial in which counsel had more time for preparation. Lack of due process is implicit.